**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMIE HUBER, individually and on behalf of all others similarly situated, | : : : | |
| Plaintiff, | : : | CIVIL ACTION No. 2:19-01424 |
| v. | : : | |
| SIMON'S AGENCY, INC., Defendant. | : : : | |

**November 17, 2021**                                                                **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

Plaintiff Jamie Huber allegedly incurred four debts to creditor Crozer Health Network ("Crozer"). Crozer contracted with Defendant Simon's Agency, Inc. ("SAI"), a collection agency specializing in medical billing, to collect all four debts. SAI sent Huber collection letters and contacted her about the debts via her cell phone. Huber brings two putative class action claims against SAI for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* She also brings two individual claims against SAI for violations of the FDCPA and of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. I exercise federal question jurisdiction over all four claims pursuant to 28 U.S.C. § 1331.

In December 2020, the parties filed cross-motions for summary judgment. SAI moves for summary judgment on all four claims. Huber moves for partial summary judgment on the three FDCPA claims; two are putative class claims limited to liability. I will grant in part and deny in part the cross-motions for summary judgment.

1

## I.    BACKGROUND[1]

In early 2018, Jamie Huber visited doctors at Crozer on four separate occasions. At each doctor's visit, Huber filled out paperwork providing her cell phone number. Huber's four doctor visits resulted in four debts to Crozer that were subsequently placed with SAI for collection:[2]

| Date of Medical Service | Date of Debt Placement with SAI | Balance of Debt Placed with SAI |
|---|---|---|
| 02/09/2018 | 05/22/2018 | $178.00 |
| 02/22/2018 | 06/12/2018 | $78.00 |
| 03/27/2018 | 07/10/2018 | $83.50 |
| 05/22/2018 | 09/04/2018 | $178.00 |

Each debt was given a unique account number, and the four debts were aggregated under a single "master number" labeled with Huber's name and the relevant creditor (Crozer). After each debt was placed with SAI for collection, SAI mailed Huber an initial collection letter. None of the letters were returned as undeliverable. The letters all follow the same format as the fourth collection letter sent by SAI on September 6, 2018:

---

[1] The facts presented in this section are drawn primarily from Pl.'s Statement of Undisputed Material Facts, ECF No. 60-2, and Def.'s Statement of Undisputed Material Facts ("Def.'s SOUF"), ECF No. 58-1. Any additional details presented here, provided solely as context for the legal analysis that follows, do not represent findings of fact by the Court. I use ECF page numbers when necessary.

[2] This data taken from Def.'s Ex. A-5, ECF No. 58-2 at 72.



SIMON'S AGENCY INC.
4963 WINTERSWEET DRIVE
LIVERPOOL, NY 13088
info@simonsagency.com



**SIMON'S**
AGENCY, INC.

September 6, 2018

JAMIE L HUBER
311 N SYCAMORE AVE APT B1
CLIFTON HEIGHTS, PA  19018-1539

| Account Summary | | |
|---|---|---|
| Original Creditor | | |
| CROZER (CERNER) | | |
| File # | Amount | Various Other Accts Total Balance |
| 1963792 | $178.00 | $517.50 |

CROZER (CERNER) has referred your past due account to our office for collections.

You may not have intentionally neglected this obligation, but it is seriously past due.  If you would like our cooperation then:

1. Remit payment in full to this office, or,
2. **www.paysimons.com**
3. Contact (315) 454-8833 in person or by telephone to arrange a payment plan.

Thank you for your cooperation in this matter.

Sincerely,

SIMON'S AGENCY INC.

**THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. UNLESS YOU DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION THEREOF, WITHIN THIRTY (30) DAYS OF RECEIPT OF THIS LETTER, WE WILL ASSUME THAT THIS DEBT IS VALID. IF YOU NOTIFY US IN WRITING WITHIN THE THIRTY (30) DAY PERIOD THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED, WE WILL OBTAIN VERIFICATION OF THE DEBT OR A COPY OF THE JUDGMENT AGAINST YOU AND MAIL SUCH VERIFICATION OR COPY TO YOU. WE WILL ALSO PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR, UPON YOUR WRITTEN REQUEST WITHIN THE THIRTY (30) DAY PERIOD.**

### PAYMENT OPTIONS

**Payments By Internet**

www.paysimons.com
Visa, MasterCard, Discover,
& American Express
Check (ACH) also available

**Payments By Phone**

*Please Call*
*(315) 454-8833 or (844) 588-8833*
Visa, MasterCard, American
Express & Discover, Debit Card
Check-By-Phone

**Payments By Mail**

Visa, MasterCard, Discover,
& American Express
Check
*(You can use the return envelope provided and the bottom portion of this notice for your convenience.)*

\*WE REPORT DELINQUENT ACCOUNTS TO THE CREDIT BUREAU\*

SIMON3190906115.00039.01.01.000000

**\*\*\* Detach Lower Portion And Return With Payment \*\*\***

PO Box 5026
Syracuse, NY  13220-5026

IF YOU WISH TO PAY BY CREDIT CARD, CIRCLE ONE AND FILL IN THE INFORMATION BELOW.

| MasterCard | VISA | DISCOVER | |
|---|---|---|---|

CARD NUMBER                                                      EXP. DATE

CARD HOLDER NAME                                        CVV

SIGNATURE                                        AMOUNT PAID

September 6, 2018

Original Creditor: CROZER (CERNER)
File No:            1963792
Total Balance:   $517.50

JAMIE L HUBER                    539
311 N SYCAMORE AVE APT B1
CLIFTON HEIGHTS PA 19018-1539

**REMIT PAYMENT TO:**

Simon's Agency Inc.
PO Box 5026
Syracuse, NY  13220-5026

EXHIBIT
D-6
3-5-20 JB

Ltr: 1A

3

When each debt was placed with SAI, Crozer also provided SAI with Huber's contact telephone number. SAI was provided with the same number—Huber's cell phone number—all four times. SAI phoned Huber on her cell phone twice in June 2018, seeking to collect on the first two debts owed to Crozer. On June 28, 2018, Huber's financial advisor sent SAI a letter on Huber's behalf disputing the first two debts and directing SAI to stop making calls to Huber's cell phone. SAI received the letter on July 3, 2018 and noted Huber's permanent cease and desist request on her master account, placing the first two debts in dispute status. After the third debt was placed for collection, an SAI employee noted the cease and desist request on Huber's master account and marked the third account as disputed. After the fourth debt was placed for collection, SAI resumed attempts to reach Huber to discuss that fourth debt, calling Huber's cell phone twelve times between October 10, 2018 and March 9, 2019.[3] During the March 9, 2019 phone call, Huber told SAI that her attorney had advised her that SAI should no longer call her cell phone. On April 3, 2019, Plaintiff filed the instant case.

## II.    STANDARD OF REVIEW

SAI moves for summary judgment on all claims and Huber moves for partial summary judgment on three of four claims, all under Rule 56 of the Federal Rules of Civil Procedure.

Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.* In ruling on a motion for summary judgment, the court must draw all

---

[3] This data taken from Def.'s Ex. B-6, ECF No. 58-3 at 12.

4

inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The summary judgment standard is the same for cross-motions as it is when only one party moves for summary judgment. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). When facing cross-motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether judgment may be entered in accordance with the Rule 56 standard." *Id.* (citations and internal quotation marks omitted). "Both motions must be denied if the court finds that there is a genuine dispute of material fact." 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 2720 (4th ed. 2020). In short, the ultimate question at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

SAI can prevail on its motion by showing that Huber lacks evidentiary support as to any of the elements necessary to prove her FDCPA or TCPA claims at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). Huber can survive SAI's motion by showing that she has sufficient evidence to allow a jury to rule in her favor on every FDCPA or TCPA element.

Huber has a tougher task on her motion for summary judgment. For Huber to prevail, she must affirmatively prove that (1) she has evidentiary support for each element of her FDCPA claims and (2) on each of those elements, the evidence is so one-sided that no reasonable jury

could rule in SAI's favor.[4] To survive Huber's motion, SAI need only raise a genuine dispute of material fact as to any one of the FDCPA elements.

## III.   DISCUSSION

### A.  Collection Letter FDCPA Putative Class Claims

Huber's two putative class claims rely on a single argument: that in sending Huber the September 6, 2018 debt collection letter, including both the balance of the individual debt and the balance of all of Huber's debts to Crozer, SAI violated the FDCPA. Huber argues that the letter violated both 15 U.S.C. § 1692g and  15 U.S.C. § 1692e.

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (internal quotation marks omitted)). The parties dispute only the fourth element—whether SAI's collection letter violated a provision of the FDCPA. Whether SAI's collection letter violates the FDCPA is a question of law. *Moyer*, 991 F.3d at 469 (citing *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n.2 (3d Cir. 2000)).

---

[4] "Where the party moving for summary judgment is the plaintiff, or the party who bears the burden of proof at trial, the standard is more stringent." Nat. State Bank v. Fed. Rsrv. Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). When the moving party "has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re* Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991)); *see also* 10A WRIGHT & MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 2727.1 (4th ed.) ("[I]f the movant bears the burden of proof on a claim at trial, then its burden of production is greater. It must lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing.").

Section 1692g(a) requires that a debt collection notice state the amount of the debt, the original creditor, instructions for disputing the debt, and a statement that if the debt is not disputed in 30 days, it will be assumed valid. 15 U.S.C. § 1692g(a). The notice "must intelligibly convey the § 1692g(a) requirements." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 594 (3d Cir. 2020) (en banc). Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Claims brought under both § 1692g and § 1692e should be considered from the perspective of the least sophisticated debtor. *Moyer*, 991 F.3d at 470; *Jensen*, 791 F.3d at 418. This is an objective standard, meaning Huber doesn't need to prove she was confused or misled, only that "the objective least sophisticated debtor would be." *Jensen*, 791 F.3d at 419. The question for the Court on these claims, then, is whether an objective least sophisticated debtor would find that the letter intelligibly communicated "amount of [their individual] debt," and whether the combination of the "amount" and "various other accts total balance" boxes was deceptive or misleading. The least sophisticated debtor standard "protects naive consumers [but] also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Wilson*, 225 F.3d at 354–55 (citing *Clomon v. Jackson*, 988. F.2d 1314, 1318 (2d Cir. 1993)).

1.   <u>§ 1692g(a) Claim (Count II)</u>

In her § 1692g claim, which focuses solely on the September 6, 2018 collection letter, Huber alleges that SAI failed to meet the requirement of unambiguously communicating the "amount of the debt." She alleges that the letter was unclear as to whether she owed $178 (listed as "Amount"), $517.50 (listed as "Various Other Accts Total Balance"), or the sum of the two ($695.50). Huber also notes that all four letters included the same "File #"—the master account number, not the account number assigned to each individual debt—making it difficult for the least sophisticated consumer to determine which "Various Other Accounts" are represented by the $517.50 balance. Huber suggests that SAI should have identified the accounts included in that total "other accounts" balance and should have provided the creditor for each.

SAI counters that each letter included what is required under § 1692g: the amount of the debt, labeled as "Amount." The additional information provided (the total balance of all debts Huber owed to Crozer), SAI argues, is supplementary and should be read in context of the three prior letters Huber received from SAI. SAI also argues that Huber must have been aware that the "Other Accounts" referenced were the four debts she owed to Crozer, because she or her financial advisor separately disputed the individual accounts via SAI's online dispute management system.

There are no Third Circuit precedential opinions interpreting a collection letter including both the individualized debt balance and a total balance across all accounts. The Seventh Circuit, however, provides helpful persuasive guidance. In *Olson v. Risk Management Alternatives, Inc.*, the Seventh Circuit held that collection letters stating both an overall account total and a current amount due are valid under § 1692g. 366 F.3d 509, 513 (7th Cir. 2004). In affirming the lower court's grant of summary judgment for the debt collector, the *Olson* Court "conclude[d] that an

unsophisticated consumer, able to make 'basic logical deductions and inferences' and to not interpret collection letters 'in a bizarre or idiosyncratic fashion,' would understand that the amount of the debt is the 'Balance' and that the amount 'Now Due' is the portion of the balance that the creditor will accept for the time being until the next bill arrives." *Id.*

Furthermore, District Courts within our own Circuit have issued opinions adopting this Seventh Circuit approach. *See, e.g.*, *Blair v. Fed. Pac. Credit Co.*, Civ. No. 20-4100, 2021 WL 4398665, at *5 (D.N.J. Sept. 27, 2021) (granting motion to dismiss upon finding that a collections letter containing both the amount owed/total balance and a "reduced balance amount" the creditor was willing to accept complied with the provisions of § 1692g(a)); *Hopkins v. Advanced Call Ctr. Techs., LLC*, Civ. No. 20-06733, 2021 WL 1291736, at *3 (D.N.J. April 7, 2021) (granting motion to dismiss on § 1692g(a) claim where the debt collection letter provided both a total balance and an amount now due, because "'now due,' even to an unsophisticated consumer, simply means that the debt collector is willing to accept less than the total balance of the debt to bring the account to a current status); *Reynolds v. Encore Receivable Mgmt.*, Civ. No. 17-2207, 2018 WL 2278105, at *5 (D.N.J. May 15, 2018) (same).

I adopt the reasoning of these cases, and thus grant summary judgment for SAI on Huber's § 1692g(a) claim. The letter at issue intelligibly states the amount of the debt. The caselaw supports SAI's position that § 1692g(a) only requires a statement of the amount of the debt placed with the debt collector—the placement that triggered the collector to send the debt notice. SAI provided that under "Amount". The "Various Other Accts Total Balance" figure is supplementary and so the caselaw interpreting the requirements of § 1692g—that communication of the required information in the debt notice be intelligible in isolation from prior or subsequent communications—does not apply. There is no language in the FDCPA, nor

requirement read into the FDCPA, requiring debt collectors to provide itemization of debt when a total of all accounts is provided. *See Wilson v. Trott Law, P.C.*, 118 F. Supp. 3d 953, 963 (E.D. Mich. 2015) ("There is no language in the FDCPA that requires a debt collector to provide a complete breakdown of the debt owed."); *Moran v. Greene & Cooper Att'ys LLP*, 43 F. Supp. 3d 907, 914–15 (S.D. Ind. 2014) ("A debt collector need not 'itemize' the debt, so long as its statement of the total is clear and accurate."); *Scioli v. Goldman & Warshaw P.C.*, 651 F. Supp. 2d 273, 281 n.15 (D.N.J. 2009) ("[T]he Court does not hold that a debt collector must itemize the fees and costs it seeks in order to comply with the FDCPA.").

Huber fails to cite cases holding otherwise.

First, Huber cites several District Court cases from outside the Third Circuit where courts found in favor of FDCPA plaintiffs because the debt notices at issue included only a total balance for multiple accounts placed by multiple creditors. *See Deporter v. Credit Bureau of Carbon Cnty.*, No. 14-cv-00882-KMT, 2015 WL 1932336, at *7 (D. Colo. April 28, 2015) (granting summary judgment to plaintiff on a § 1692e claim where Defendant's letter failed to itemize "Total Due" as including four different debts placed by three different creditors*); Smith v. Am. Revenue Corp.*, No. 2:04-cv-00199-PRC, 2005 WL 1162906, at *8 (N.D. Ind. May 16, 2005) (granting summary judgment to Plaintiff on a § 1692e claim where Defendant's letter requested payment on a lump sum amount for "various accounts" without identifying individual creditors and amounts). These cases are inapposite because, even if they both involved § 1692g claims, the letters at issue included only a total due across all accounts, and not an individualized statement of the amount due on the account recently placed with the collector and thus prompting the collector to send the debt notice. In Huber's case, the letter provided both the

amount of the debt and a total across other accounts—this is very different from a letter that fails to state the amount of the individual debt that prompted the collector to send the notice.

Second, Huber cites an E.D.N.Y. case where the Court granted summary judgment for the plaintiff on their § 1692g claim because the collection letter at issue included the balance of the debt as of a given date, but also noted the balance "may include additional charges" if permitted by the lending agreement. *Weiss v. Zwicker & Assocs., P.C.*, 664 F. Supp. 2d 214, 217 (E.D.N.Y. 2009). Huber likens this to her own letter, in that the plaintiff in Weiss was not sure if the balance given already included additional charges or if it was possible that additional charges could be applied in the future, just as Huber was unsure if the "Total Various Accts" included the $178 listed under "Amount" or not. Again, this case is inapposite. Although Huber's alleged confusion on this issue is not unreasonable, that confusion goes to the overall deceptiveness of the letter, not to whether the letter stated the amount of the debt. Huber was allegedly confused about the total she owed—$517.50 or $695.50—and to which creditors she owed that amount, but it defies belief that she would not understand the amount of the individual debt that triggered the letter from SAI.

Finally, Huber cites cases within the Third Circuit finding that consumers are not required to recall the contents of earlier communications from a debt collector and that each individual notice must intelligibly communicate the required elements of § 1692g without the benefit of the context of prior letters from the same collector. *See Tepper v. Amos Fin., LLC*, Civil Action No. 15-cv-5834, 2017 WL 3446886, at *10 (E.D. Pa. Aug. 11, 2017) (Joyner, J.) (finding for Plaintiff on § 1692e claim where collector communication of amount due could only be understood through application of interest rates included in prior communications); *Blandina v. Midland Funding, LLC*, Civil Action No. 13-1179, 2014 WL 6892083, at *1 n.1 (E.D. Pa.

Dec. 4, 2014) (Quiñones Alejandro, J.) ("Under th[e least sophisticated debtor] standard, a consumer is not expected to recall the contents of earlier communications from the debt collector."); *Lukawski v. Client Servs., Inc.*, No. 3:12-CV-02082, 2013 WL 4647482, at *3 (M.D. Pa. Aug. 29, 2013) (granting summary judgment for Plaintiff on § 1692e claim on grounds that the least sophisticated debtor cannot be expected to recall a disclosure received in a prior collection letter).

Plaintiff accurately restates the findings of these cases, but her application of the law to her own case is flawed. No context is required for Plaintiff to understand the amount of the debt. That amount is clearly stated on the letter as "Amount." What is less clear is the total amount owed over all accounts, and to understand this total, the context of prior letters is required. But § 1692g does not require collectors to include a total of all accounts placed for collection, and because this information is supplementary, the law requiring that each letter intelligibly communicate the elements of § 1692g does not apply.

Because SAI's September 2018 letter to Huber included the amount of the debt, Huber cannot prove the elements of her § 1692g claim and SAI is thus entitled to summary judgment on Count II.

### 2. § 1692e Claim (Count I)

In Huber's § 1692e claim, she asserts that a lack of clarity in the amount of the debt made SAI's letter inherently "deceptive" and "misleading" because it could trick a debtor into falsely believing they owe more than they do. Huber argues that she reasonably believed she owed the sum of the two amounts listed in the letter ($178 + $517.50 = $695.50) when she, in fact, only owed $517.50, the sum listed under "Various Other Accts Total Balance." Huber argues that her

reading of the letter is, in fact, the most reasonable one under the least sophisticated debtor standard.

SAI counters that the letter at issue clearly states both the total balance on the fourth account ($178) and the total balance of the four accounts Huber owed Crozer ($517.50). SAI argues that Huber had the letters SAI sent about the first three debts and thus should have known that the four individual debts added up to $517.50 and not to $695.50. SAI also notes that Huber or her agent subsequently disputed the four accounts and that she therefore should have known their total balance.

Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." In the Third Circuit, a collection letter violates § 1692e under the least sophisticated debtor standard when "'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Moyer*, 991 F.3d at 470 (quoting *Wilson*, 225 F.3d at 354).

SAI's letter at issue has two reasonable meanings, one of which is inaccurate. Although the amount of the individual debt is stated in the fourth letter ($178), it is unclear whether the total amount of the debts incurred to Crozer and placed with SAI for collection is $517.50 or $695.50. Only one of these can be true, but both interpretations of the letter are reasonable from the perspective of the least sophisticated debtor.

An E.D.N.Y. Court's consideration of a similar debt collection letter in *Miles v. Retrieval-Masters Creditor's Bureau, Inc.* is illustrative here. The letter at issue in *Miles* contained enumeration of individual debts (four debts of $20, each labeled with date of service, account number, and amount due), a balance due on "Other Accounts" (listed as $40) and a "Total Balance Due" (listed as $120). No. 14-CV-6607, 2016 WL 1258481, at *1 (E.D.N.Y.

Mar. 29, 2016). Writing that the letter clearly and unequivocally provided the grand total due, the *Miles* Court granted summary judgment for the debt collector because the use of "other accounts" was not false, deceptive or misleading under § 1692e.

The letter SAI sent Huber is different from the letter at issue in *Miles*. In *Miles*, simple addition of all listed debts provided a grand total due that matched the total balance provided in the letter. The letter to Huber, however, cannot be understood through simple arithmetic without considering the previous three letters from SAI about other Crozer debts. Even then, as all four letters included only the master account number (labeled "File #") rather than the four separate account numbers assigned to each individual debt, the number of "accounts" included in "Various Other Accts Total Balance" is unclear. This argument held no water as to Huber's § 1692g claim because § 1692g(a) requires very little—that the letter state the amount of the individualized debt, with no requirement to itemize the debts that make up any multi-account total balance. But § 1692e directs the Court to ask a more general question: is it objectively reasonable for Huber—or for a hypothetical least sophisticated debtor in her position—to be misled by the letter as a whole? The answer here is yes, because the letter left her unclear whether she owed $517.50 or $695.50. It would not be difficult to make the letter clearer—for instance, by enumerating the individual debts previously placed, thus showing the recipient how the grand total was reached—encouraging speculation that, perhaps, SAI hopes for the very brand of confusion Huber alleges and the surplus payment that might be submitted as a result.

SAI's letter is undoubtedly open to more than one reasonable interpretation, one of which is inaccurate. Under Third Circuit law, the September 2018 letter is thus deceptive under § 1692e, entitling Plaintiff to summary judgment on Count I.

14

### B.  Telephone Call-Based FDCPA Claim Under § 1692c (Count IV)

As with Huber's letter-based putative class claims, her phone call-based individual claims under the FDCPA (§ 1692c) and the TCPA are based on a single argument: that she sent SAI a letter disputing the debts and requesting that SAI no longer call her regarding the debts, but that SAI continued to call her cell phone even after noting receipt of the do-not-call request.

After Huber's fourth debt to Crozer was placed with SAI for collection, SAI called Huber several more times on her cell phone. Huber argues that these calls violated § 1692c because her June 28 cease and desist request covered all past **and** future accounts. Huber contends that SAI's notation of the cease and desist in their internal database under her master account number—and not simply under each individual account number for her debts placed as of June 28, 2018— proves that SAI intended the do-not-call request to apply to all of Huber's past and future debts owed to Crozer. The calls SAI placed to Huber after the fourth debt owed to Crozer was placed with SAI, Huber argues, involved attempts by SAI employees to collect not only the fourth debt but all debts owed to Crozer.

SAI admits that calls were placed to Huber after placement of the fourth debt to Crozer. SAI argues, however, that these calls were attempts to collect the fourth debt only. SAI contends that the June 28 dispute letter did not apply to debts subsequently placed with SAI for collection, meaning that they were not prohibited from calling Huber in an effort to collect the third and fourth debts.

Section 1692c(c) provides that "if a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt[.]" 15 U.S.C. § 1692c(c). Section 1692c(c)'s prohibition on

further communication after a debtor sends a cease and desist letter turns on the definition of

"such debt." The Third Circuit and other District Courts have held that the § 1692c(c) prohibition

only applies to debt obligations owed at the time of the cease and desist notice; a separate and

subsequent failure to pay creates a new debt, and communications about that that new or future

debt are not prohibited by § 1692c(c). *See Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir.

1991), overruled on other grounds by *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020)

(holding that a debt collector is not charged with knowledge that a debtor is represented by

counsel on future debts even though the collector was so informed as to prior debts, and thus

affirming grant of summary judgment for collector under § 1692c(a)(2)); *Crenshaw v. Computex

Info. Servs., Inc.*, Civil Action No. 10-1493, 2011 WL 1640175, at *10 (D.N.J. April 30, 2011)

(granting motion for judgment as a matter of law for defendant debt collector on § 1692c(c)

claim that collector's letter about unpaid rent for a subsequent month was improper after Plaintiff

sent cease and desist letter regarding a prior month's unpaid rent); *Bishop v. I.C. Sys., Inc.*, 713

F. Supp. 2d 1361, 1366 (M.D. Fla. 2010) ("Even after a debt collector receives a consumer's

cease and desist letter, the FDCPA allows the debt collector to contact the consumer about other

debts or future debts.") (emphasis in original); *Udell v. Kansas Couns., Inc.*, 313 F. Supp. 2d

1135, 1142 (D. Kan. 2004) (granting summary judgment for debt collector upon holding that

"the FDCPA's prohibition on communicating with a consumer after the consumer directs the

debt collector to cease communications applies only to currently existing debts, not future

debts.")

      Because analysis of a § 1692c(c) claim turns on whether collector communications after a

cease and desist letter were solely in aid of collecting new or different debts, the outcome of

Huber's § 1692c claim depends on whether the SAI employees making calls to Huber after

placement of the fourth debt to Crozer attempted to collect only the fourth debt, or attempted to collect all four debts—including the two debts placed with SAI prior to Huber sending her cease and desist letter.

SAI states on the record that calls made subsequent to the cease and desist letter were only in reference to the fourth debt and that there was no attempt to collect on prior debts during those calls. Def.'s SOUF ¶¶ 51, 53–56, 64. Huber challenges this fact in her briefing, but cites to no source on the record that properly supports such a claim. Her citation to the deposition of Timothy Buckles, Chief Operating Officer for SAI, is unavailing. In his testimony, Mr. Buckles distinguishes between a "normal account," and an account under cease and desist. He testifies that under a normal account, SAI employees placing calls to debtors will "try and talk about all of the debts that we're aware of at the time." Buckles Dep. 31:24–32:2. Under a cease and desist, however, any calls made would relate only "to the new accounts that [SAI is] trying to inform them of." *Id.* 32:3–8. The only time the customer representative would provide information about accounts placed with SAI prior to the cease and desist, Buckles notes, was if the consumer asked for the total balance or for other information about their earlier debts. *Id.* 32:9–22; 119:12–121:15. Plaintiff selectively quotes from Buckles' deposition in an attempt to convince the Court that it is SAI's practice to discuss all debts with customers even after a cease and desist request is delivered. Plaintiff further points to a recording of a conversation between Huber and an SAI agent wherein the agent provided Huber with the sum of all Crozer accounts at that time ($256). *Id.* 115:22–116:11. But this conversation took place prior to July 3, when SAI received the cease and desist request.

Plaintiff cites to no evidence in the record, in Huber's own deposition or otherwise, explicitly stating that SAI attempted to collect on debts covered by the cease and desist request.

As such, there is no dispute of material fact on this claim. Plaintiff has failed to meet her burden of proving that SAI in any way violated § 1692c, and SAI is entitled to summary judgment on Count IV.

### C.  TCPA Claim (Count III)

Huber's final individual claim is that SAI violated the TCPA by placing autodialed calls to her cell phone. SAI counters that Huber consented to calls when she provided her cell phone number to Crozer in connection with the medical services she received, and which generated the debts then placed with SAI for collection. In response to Huber's complaint that SAI continued to call her after the June 28 dispute letter, SAI reiterates that it only called Huber about subsequently placed debts and that, when Huber told SAI on March 9, 2019 that her attorney advised her that SAI should not be calling her phone, SAI ceased all calls.

The TCPA bars "any person within the United States" from making calls to a phone number assigned to a "cellular telephone service" using an "automatic telephone dialing system." 47 U.S.C. § 227(b)(1)(A)(iii). Excepted from this proscription are calls made with the "prior express consent of the called party." *Id.*

Courts in the Third Circuit look to Federal Communications Commission (FCC) interpretation of the TSCA in determining whether a plaintiff consented to the calls at issue. *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 389 (3d Cir. 2017). According to the FCC, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." 7 F.C.C. Rcd. 8752, 8769 (1992). Further, the "provision of a cell phone number to a creditor . . . reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt" if the number was provided "during the transaction that resulted in

the debt owed." 23 F.C.C. Rcd. 559, 564–65 (2008). "Calls placed by a third party creditor on

behalf of that creditor are treated as if the creditor itself placed the call." *Id.* at 565. As such, "a

cellphone subscriber could provide his number to a creditor and grant prior express consent to

receive autodialed or prerecorded calls by affirmatively giving an intermediary like [a hospital]

permission to transfer the number to [his creditor] for use in billing." *Daubert*, 861 F.3d at 390

(quoting *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1124 (11th Cir. 2014)

(internal quotations omitted)).

Prior express consent may nevertheless be revoked. "The TCPA provides consumers with

the right to revoke their prior express consent to be contacted on cellular phones by autodialing

systems." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 272 (3d Cir. 2013). The right to

revocation is consistent with the common law principle that consent is revocable and honors the

purpose of the TPCA. *Id.* at 270. "[A] consumer may 'fully revoke[ ]' her prior express consent

by transmitting an opt-out request to the sending party." *Id.* at 269 (quoting *In re Rules & Reguls.*

*Implementing the TCPA of 1991, SoundBite Commc'ns, Inc.*, 27 FCC Rcd. 15391, 15397 ¶ 11 n.

47 (Nov. 26, 2012)). Although *Gager* did not place limitations on the means through which a

consumer may revoke prior express consent, other Circuit Courts have explicitly authorized oral

revocation of prior express consent. *See, e.g.*, *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242,

1255–56 (11th Cir. 2014). District Courts in the Third Circuit have recognized the validity of

oral revocation. *See, e.g.*, *Ruby v. DISH Network, LLC*, No. CV 18-0400, 2019 WL 1466746, at

*1 n.1 (E.D. Pa. Mar. 26, 2019) (Slomsky, J.) ("Consumers can revoke their consent orally.");

*Coleman v. Colorado Tech. Univ.*, No. CV 16-4237, 2017 WL 2377714, at *2 (E.D. Pa. June 1,

2017) (McHugh, J.) (recognizing the capacity to revoke consent orally but noting that such

consent must be unequivocal); *Gillard v. Receivables Performance Mgmt., LLC*, No. CIV.A. 14-

02392, 2015 WL 3456751, at *4 (E.D. Pa. June 1, 2015) (Pappert, J.) ("Consumers can revoke

their prior express consent and can do so orally."); *see also Zondlo v. Allied Interstate, LLC*, 290

F. Supp. 3d 296, 305 (M.D. Pa. 2018) (recognizing plaintiff's right to revoke consent over the

phone); *Watkins v. Wells Fargo Bank, N.A.*, No. CV 15-5712 (RMB/KMW), 2017 WL 2399086,

at *6 (D.N.J. June 2, 2017) (noting that a plaintiff is permitted to orally revoke consent to be

called on their cell phone by a creditor).

      In seeking summary judgment on Huber's TSCA claim, SAI must show an "absence of a

genuine issue of material fact" as to whether Huber revoked her consent to be contacted via

phone. *Celotex*, 477 U.S. at 323. Huber clearly revoked consent as to calls about the first two

debts when she sent SAI her Dispute Letter on June 28, 2018. According to SAI, Huber revoked

consent to be called on two occasions: first on June 20, 2018 as to the first two Crozer debts, and

second on March 9, 2019 about the remainder of the debts. SAI states that, between June 28,

2018 and March 9, 2019—when Huber advised an SAI representative that she no longer wanted

to be called—calls placed to Huber were only about the fourth debt, and that SAI ceased all calls

to Huber after March 9, 2019. Buckles Aff. ¶ 31; ECF No. 58-4 at 86. Huber counters she asked

SAI not to call her every time she answered a call from an SAI representative. Huber Dep. 24:8-

12, 21-24. According to SAI records, SAI employees spoke to Huber twice between June 28,

2018 and March 9, 2019: first on October 10, 2018, and then on November 11, 2018. ECF No.

58-4 at 88. Whether Huber orally revoked her prior express consent on either occasion, then, is a

disputed material fact. This dispute makes summary judgment on Huber's TSCA claim

inappropriate at this juncture.

**IV.    CONCLUSION**

For the reasons above, I will grant SAI's motion for summary judgment as to Counts II and IV, deny SAI's motion as moot as to Count I, and deny SAI's motion as to Count III. I will grant Huber's motion for partial summary judgment—as to liability only—as to Count I and deny Huber's motion as moot as to Counts II and IV.


_s/ANITA B. BRODY, J.__ ____
ANITA B. BRODY, J.


Copies **VIA ECF**