IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE HUBER, individually and on behalf of all others similarly situated, | : : : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 2:19-01424 |
| v. | : : | |
| SIMON'S AGENCY, INC., | : | |
| Defendant. | : | |

**December 3, 2021**                                                              **Anita B. Brody, J.**

## **MEMORANDUM**

Jamie Huber brings this putative class action lawsuit against Simon's Agency, Inc. ("SAI"), a collection agency specializing in medical billing. Huber, a debtor to whom SAI sent four letters related to visits to doctors in the Crozer Health Network ("Crozer"), alleges that SAI violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, by sending collection letters that were deceptive or misleading in violation of § 1692e.[1] On November 17, 2021, I granted Huber's motion for summary judgment as to SAI's liability on her § 1692e claim, finding that the collection letter SAI sent her on September 6, 2018 was misleading and deceptive.[2]

In December 2020, Huber filed her motion for class certification under Federal Rule of Civil Procedure 23(b)(3). Huber moves for an order: (1) certifying her proposed class of 676

---

[1] I exercise federal question jurisdiction over this claim pursuant to 28 U.S.C. § 1331.
[2] In the same memorandum, I granted summary judgment for SAI on Huber's other putative class claim under § 1692g.

recipients of the same form letter; (2) appointing Huber as class representative; and (3) appointing Marcus & Zelman, LLC as class counsel. Huber argues that all requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) for class certification have been met. SAI counters that Huber's FDCPA claim is not common or typical of the class she seeks to represent and challenges Huber's contention that a class action is the superior means of adjudicating any dispute between SAI and members of the putative class.

For the reasons below, I will grant Plaintiff's motion and certify the class.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**[3]

In 2018, Jamie Huber visited a doctor in the Crozer Network, resulting in a debt owed to Crozer. This debt was subsequently placed with SAI for collection. On September 6, 2018, SAI sent Huber a collection letter seeking to collect this debt. Huber had received prior collection letters from SAI related to other debts she had incurred to Crozer. Huber received and read the letter dated September 6, 2018, of which a portion is shown here:



---

[3] The facts presented in this section are drawn from Plaintiff's Second Amended Complaint (ECF No. 49) and Motion for Class Certification (ECF No. 59).

On April 3, 2019, Huber filed the instant putative class action suit, alleging that SAI's form letter violated § 1692e and § 1692g of the FDCPA.[4] On December 3, 2020, Huber filed a motion for partial summary judgment (ECF No. 60). SAI filed a motion for summary judgment on the same day (ECF No. 58). On November 17, 2021, I granted Huber's motion for summary judgment on her § 1692e putative class claim but granted SAI's motion for summary judgment on the § 1692g putative class claim. As such, Huber's only remaining class claim is SAI's violation of § 1692e.

Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." A collection letter violates § 1692e under the least sophisticated debtor standard when "'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000)). In granting summary judgment for Huber on her § 1692e claim, I found that SAI's form letter had two reasonable meanings, one of which is inaccurate, as it was unclear whether Huber's debts to Crozier totaled $517.50 or $695.50.

On December 3, 2020, Huber also filed the motion for class certification now before me (ECF No. 59). She seeks to certify a class of "all consumers in Clifton Heights, PA (1) who received a 'Letter 1a' Collection letter from the Defendant (2) containing a reference to 'Various Other Accounts', (3) on an obligation owed or allegedly owed to Crozer, (4) during the time period of April 4, 2018 to May 30, 2018." Huber also moves for appointment of Marcus & Zelman, LLC as class counsel. On January 4, 2021, SAI filed its response in opposition to the

---

[4] Plaintiff also asserted two individual claims under (1) § 1692c of the FDCPA and (2) the TCPA.

instant motion for class certification (ECF No. 63). Huber filed her reply on January 18, 2021 (ECF No. 67).

**II. DISCUSSION**

Every putative class action "must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). A plaintiff seeking class certification "bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23." *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 265 (3d Cir. 2021) (quoting *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015)).

**A. Rule 23(a) Requirements**

To meet the requirements of Rule 23(a):

> (1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) there must be questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and (4) the named plaintiffs must fairly and adequately protect the interests of the class (adequacy of representation, or simply adequacy).

*In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 190 (3d Cir. 2020) (quoting *Marcus*, 687 F.3d at 590–91).

1. <u>Numerosity</u>[5]

Although there is no minimum number of class members required for certification, the Third Circuit has held that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v.*

---

[5] Although SAI does not dispute that it sent 676 initial collection letters with the same "Amount" and "Various Other Accts" boxes, the Court must engage in independent analysis to ensure that all requirements of Rule 23(a) are met.

*Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). Here, the prospective class size of 676 recipients easily meets the Third Circuit requirement and numerosity is satisfied.

2. Commonality

The commonality requirement of Rule 23(a)(2) demands the presence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "Rule 23(a)(2)'s commonality requirement does not require identical claims or facts among class member[s]. For purposes of Rule 23(a)(2), even a single common question will do." *Marcus*, 687 F.3d at 597 (quotation marks and citations omitted). The putative class claim "must depend upon a common contention [that is] of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, Huber asserts the presence of common questions of law and fact. Factually, each prospective class member received the same form letter with a box marked "Amount" (representing the total on the single account prompting SAI to send the letter) and a box marked "Various Other Accts Total Balance." Pl.'s Br. 13. Therefore, Huber asserts, the question of whether this letter violates 15 U.S.C. § 1692e is likewise common to all prospective class members. *Id.*

SAI counters that because Huber's interpretation of SAI's September 6, 2018 letter—that she may have owed a total of $696.50, not $517.50, to SAI to satisfy debts owed to Crozer—was unreasonable, her claimed injury cannot be common to the members of the putative class. Def.'s Br. [10]–[11]. SAI argues that there is no evidence in the record that other prospective class members were confused by what they received and that, as such, no common questions of fact are present. Def.'s Br. [11].

I have already determined that Huber's interpretation of SAI's September 6, 2018 letter was reasonable under the least sophisticated debtor standard and that the letter, as a matter of law, was confusing. ECF No. 69 at 14. The form letter received by all 676 prospective class members can reasonably be read to have two meanings, one of which is inaccurate, and it thus violates § 1692e under the Third Circuit's well-established test. *See Moyer*, 991 F.3d at 470 (quoting *Wilson*, 225 F.3d at 354) ("[A] collection letter 'is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'"). SAI's argument that the record fails to prove that any prospective class member was confused by the letter is not germane to the Court's analysis. Whether Huber—and each prospective class member—was subjectively confused upon receipt of the letter was never a relevant question of fact for this Court. The Third Circuit's standard is objective and no plaintiff (nor prospective class member) need prove that they were actually confused for a court to find a § 1692e violation. *See Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 (3d Cir. 2015) ("The standard is an objective one, meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be.").

A hypothetical question of relevance is whether the form letter would still be confusing if the totals in the "Amount" and "Various Other Accts" boxes were the same. Were an individual debtor and prospective class member to have only one account with SAI representing a debt owed to Crozer—with a balance of, say, $100—both the "Amount" and "Various Other Accts" boxes would read $100.[6] Would the least sophisticated debtor reasonably be confused as to

---

[6] Huber accrued four debts to Crozer that were placed with SAI; the September 6, 2018 letter was in reference to the fourth debt, meaning that the "Amount" was the total balance on the fourth debt and the "Various Other Accts" was the total balance across all four accounts. The confusion alleged, and found reasonable, was the question of whether she owed the amount listed under "Various Other Accts" ($517.50) or the sum of the two boxes ($695.50). *See* ECF No. 69 at 2–3, 12.

whether her total owed to SAI for debts to Crozer was $100 or $200 (the sum of the totals in both boxes)? I find it readily believable that a least sophisticated debtor would be so confused. Huber's own situation—having multiple doctors within the Crozer network, all of whom she visited regularly, making it impossible for her to keep track of how many visits she had made and thus the number of debts she had accrued—is not atypical. Uncertainty as to the number of debts could readily translate to uncertainty as to amount owed; the letter in our hypothetical, with "$100" in each box, still has two reasonable meanings.

Because any iteration of SAI's form letter thus satisfies the Third Circuit test for violations of § 1692e, the pertinent question of fact—did all recipients receive the form letter—and question of law—was the form letter facially confusing under § 1692e—are common to all prospective members of the class. As such, the commonality requirement is readily satisfied.

3. Typicality

For the typicality requirement to be met, a plaintiff's claims—and a defendant's defenses against them—must be typical of the prospective class members. Fed. R. Civ. P. 23(a)(3). The typicality inquiry asks "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006) (quoting *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)). The Third Circuit has "set a low threshold for satisfying" the typicality requirement. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001). The typicality requirement "acts as a bar to class certification only when 'the legal theories of the named representatives potentially conflict with those of the absentees.'" *Id.* (quoting *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996), *aff'd sub nom.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)). "If the claims of the named

plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Newton*, 259 F.3d at 183–84.

Huber argues that her claims are not only typical of those that would be brought by prospective class members, they are identical, because all members received the same form letter. Pl.'s Br. 13. There are no defenses unique to Huber's claim, she argues, nor unique circumstances about the letter she received from SAI on September 6, 2018. *Id.* SAI counters that Huber's interpretation of the September 6, 2018 letter was unique and thus cannot be typical of claims brought by the class. Def.'s Br. [12].

Huber is correct. Her § 1692e claim is typical because it arises from the same course of conduct by SAI that gives rise to any § 1692e claim of a prospective class member. The legal theory of the claims is likewise identical. SAI violated § 1692e based on the letter sent to Huber on September 6, 2018, and all members of the putative class received the same form letter. As such, all claims of the prospective class members are based on the same theory and the same established violation, and typicality is satisfied.

    4. <u>Adequacy</u>

The final prong of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. The adequacy of representation requirement addresses two components: (1) the qualifications of class counsel; and (2) the interests and incentives of the class representatives. *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012).

*(1) Adequacy of Class Counsel*

Huber has established that Marcus & Zelman LLC is "qualified, experienced, and generally able to conduct the proposed litigation," and is therefore adequate. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992) (quotation marks and citation omitted). The declaration of Mr. Marcus makes clear the firm's significant experience in representing individual plaintiffs as well as certified classes in FDCPA litigation. Mr. Marcus has zealously litigated Huber's individual claims and adequately defended the interests of the putative class.

*(2) Adequacy of Class Representative*

"A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625–26 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Huber argues that she is an adequate representative because that there are no conflicts between herself and the prospective class members; she posits that her interests and those of the putative class are identical and characterizes herself as an active participant in the litigation thus far. Pl.'s Br. 14. SAI counters that because Huber's injury is not common to the class, she cannot adequately represent it. Def.'s Br. [13]–[14]. Having found that Huber's injury is common to the prospective class and agreeing that she has been an active participant in vindicating her own rights, I find Huber to be an adequate representative for the class.

**B. Rule 23(b) Requirements**

Having determined that Huber has established numerosity, commonality, adequacy and typicality as required by Rule 23(a), the question is now whether she can meet the requirements of Rule 23(b). Huber seeks certification under Rule 23(b)(3), which imposes the additional

requirements that "(i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority)." *Marcus*, 687 F.3d at 590–91.

### 1. Predominance

To satisfy the predominance element, a plaintiff must show that common questions of law and fact predominate over individual questions. Fed. R. Civ. P. 23(b)(3). The predominance element is more demanding than the commonality element of Rule 23(a)(2). *Newton*, 259 F.3d at 187 (citing *Amchem*, 521 U.S. at 623). Although the presence of individual questions does not defeat predominance, a plaintiff seeking class certification under Rule 23(b)(3) must demonstrate that common questions outweigh individual questions. *Neale v. Volvo Cars of N. Am.*, LLC, 794 F.3d 353, 371 (3d Cir. 2015). The purpose of the predominance requirement is to ensure that the proposed class is "sufficiently cohesive to warrant certification." *Newton*, 259 F.3d at 187.

Here, Huber invokes the same argument as for commonality under Rule 23(a)(2), pointing to the single form letter sent to all putative class members, the same violation inherent in each iteration of the letter, and the same legal remedy available to all 676 recipients. Pl.'s Br. 14. The § 1692e violation inherent in each individual letter, Huber argues, may be demonstrated by the same generalized proof. *Id.* SAI counters that, because Huber's understanding of the September 6, 2018 letter is the basis for her claims, the Court can only certify the class if other prospective class members (1) experienced the same "problem of interpretation" and (2) suffered actual damages. Def.'s Br. [15]. The Court can only determine if common questions predominate, SAI suggests, if it conducts mini-trials on these two issues for each prospective class member. *Id.*

SAI's argument fails for the same reasons as those advanced in opposition to Rule 23(a) commonality. No mini-trials are required for the Court to assess predominance in this matter.

Identical subjective confusion by all class members is simply not required under the Third Circuit's objective test. *Jensen*, 791 F.3d at 419. Nor does the Court need to consult every putative class member to determine if they have suffered a particularized injury. The Court's prior finding that SAI's September 6, 2018 letter violated § 1692e, combined with the identification of a putative class whose members received the same objectively confusing form letter, is sufficient to establish the potential for injury across the putative class.[7] And as discussed in establishing Rule 23(a)(2) commonality, *supra*, any individual questions—including the possibility that the totals in the "Amount" and "Various Other Accts" boxes were the same in the letters received by some putative class members—do not alter the legal analysis common to all. Because the putative class members received the same form letter with "Amount" and "Various Other Accts" boxes, and all such form letters are held to the same legal standard under § 1692e, common questions of law and fact predominate.

### 2. Superiority

In determining whether class action is the superior mechanism for "fair and efficient adjudication," district courts must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

---

[7] "[T]he right to truthful information in [communications by a debt collector to a debtor] is a substantive right," the violation of which constitutes a concrete injury sufficient for both Article III standing and class certification. *Bock v. Pressler & Pressler, LLP*, 254 F. Supp. 3d 724, 735–36 (D.N.J. 2017); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) ("[A] plaintiff in . . . a case [challenging a procedural right granted by statute] need not allege any additional harm beyond the one Congress has identified.").

Fed. R. Civ. P. 23(b)(3)(A)–(D).

Factors (B), (C), and (D) weigh in favor of certification. There is no evidence that the 676 prospective class members are engaged in litigation against SAI regarding the form letter. There is no indication that it would be undesirable to litigate the claims in this forum as all class members reside in Clifton Heights, a mere five miles from Philadelphia and the seat of this Court. And no difficulties in managing a class action, with a putative class so narrowly tailored, are evident to the Court.

As to factor (A), the parties dispute whether class certification would best serve the interests of the prospective class members. Huber argues that the class action is the only way to ensure that putative class members' rights are protected, partly because it is far more efficient than individual lawsuits. Pl.'s Br. 15; Pl.'s Rep. Br. 17.

SAI's counterargument focuses on class members' potential recovery. Unlike an individual plaintiff, who may recover actual damages plus statutory damages not exceeding $1,000, a class member may only recover their share of the lesser of $500,000 or 1% of the net worth of the defendant. 15 U.S.C. § 1692k(a)(2)(B). Because recovery here would be *de minimis*, SAI argues, class certification would not best serve the interests of the 676 other letter recipients.[8] Huber replies that it is this *de minimis* recovery that makes class action the superior mechanism for vindicating the rights of the putative class; the costs of litigating their claims against SAI should they lose, and the small awards available in the event of success, deter class members from vindicating their rights individually. Pl.'s Rep. Br. 17. As such, Huber argues that

---

[8] In deposition of one if its officers, SAI estimated its net worth as approximately $290,000. Pl.'s Rep. Br. Ex. B.

the class action—which eliminates the risk for class members of having to pay the costs of litigation—is the best way to protect those rights and to deter future illegal practices. *Id.*

Even assuming, *arguendo*, that SAI's estimate of its net worth is accurate, class action litigation is still the superior method of resolving the putative class § 1692e claims. First, SAI's estimated net worth is not negative, which is typically the threshold at which low net worth destroys superiority. *O'Dell v. Nat'l Recovery Agency*, 291 F. Supp. 3d 687, 704 (E.D. Pa. 2018). Second, as Huber notes, it is not uncommon for prospective class members to be deterred from bringing individual suits given the significant financial risk and minimal financial reward. The class action mechanism allows for the vindication of individual rights under the FDCPA and ensures that wrongful conduct has consequences. *See Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ("Representative actions [are] fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action."); *see also Yang v. Odom*, 392 F.3d 97, 106 (3d Cir. 2004), abrogated on other grounds by *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) (quoting *Amchem*, 521 U.S. at 617) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's . . . labor."). Should prospective class members decide they wish to assume individual risk in order to potentially gain a larger judgment, they may opt out of the class and proceed as individual plaintiffs. Because prospective class members have this choice,

and because class action in this case makes vindication of substantive rights under the FDCPA most likely and efficient, the Rule 23(b)(3) superiority requirement is satisfied.

### C. Rule 23(g) Requirements

I must also appoint class counsel that will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Rule 23(g) requires me to consider four factors in appointing class counsel:

> (1) the work counsel has done in identifying or investigating potential claims in the action;
> (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (3) counsel's knowledge of the applicable law; and
> (4) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(C)(I).

The Declaration of Ari H. Marcus demonstrates that Mr. Marcus regularly conferred with Huber, drafted pleadings and motions, directed discovery, and ably advocated for the protection of Huber's rights; that Marcus & Zelman, LLC has served as class counsel in at least 21 FDCPA class-certified suits and as plaintiff's counsel in over 400 FDCPA cases nationwide; that the firm's practice is almost exclusively focused on FDCPA and other consumer protection law; and that the firm has committed and will continue to commit resources to the protection of class interests. The appointment of Marcus & Zelman, LLC as class counsel satisfies the requirements of Rule 23(g).

### III.   CONCLUSION

For the foregoing reasons, the instant action satisfies the numerosity, commonality, typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a), the predominance and superiority requirements of Rule 23(b)(3), and the class counsel requirements

of Rule 23(g). I therefore certify Huber's § 1692e claim as a class action and appoint her attorneys as class counsel. An appropriate order follows.

_s/ANITA B. BRODY, J._
ANITA B. BRODY, J.

Copies **VIA ECF**