**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMIE HUBER, on behalf of all | : | |
| others similarly situated, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 2:19-01424 |
| v. | : | |
| | : | |
| SIMON'S AGENCY, INC., | : | |
| Defendant. | : | |

**June 2, 2022**                                                                 **Anita B. Brody, J.**

## MEMORANDUM

Jamie Huber brings this class action lawsuit against Simon's Agency, Inc. ("SAI"), a collection agency specializing in medical billing. Huber, a debtor to whom SAI sent four letters related to visits to doctors in the Crozer Health Network ("Crozer"), alleged that SAI violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, by sending collection letters that were deceptive or misleading in violation of § 1692e. On November 17, 2021, I granted Huber's motion for summary judgment as to SAI's liability on her § 1692e claim, finding that the collection letter SAI sent her on September 6, 2018 was misleading and deceptive. ECF No. 70. On December 3, 2021, I certified the proposed class of individuals who had received the same misleading collection letter, and notice was disseminated to that class in March 2022. ECF Nos. 72, 86. On May 3, 2022, SAI filed a motion for reconsideration arguing that Huber lacks Article III standing. ECF No. 91. Huber has filed her response, ECF No. 96, and SAI's motion is now ripe for review.

1

I.     **DISCUSSION**

   a.  **Motion for Reconsideration**

In bringing a motion for reconsideration, the moving party must establish "(1) an

intervening change in the controlling law; (2) the availability of new evidence that was not

available when the court . . . [issued its prior decision]; or (3) the need to correct a clear error of

law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677

(3d Cir. 1999). Citing the Supreme Court's 2021 decision in *TransUnion LLC v. Ramirez*, 141 S.

Ct. 2190, SAI suggests a finding that Huber and the Class Members lack Article III standing

would reflect both an intervening change in the controlling law and prevent manifest injustice.

Def.'s Br. 6. *TransUnion* cannot be an intervening change in the law because it was decided

before this Court resolved the instant parties' motions for summary judgment; SAI might have

filed a notice of supplemental authority with the Court. However, because standing is a threshold

jurisdictional issue, I must reconsider the merits of SAI's standing argument.[1]

   b.  **Article III Standing**

To establish Article III standing, a plaintiff must show "(i) that [s]he suffered an injury in

fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused

by the defendant; and (iii) that the injury would likely be redressed by judicial relief."

*TransUnion*, 141 S. Ct. at 2203 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61

(1992)). As the party invoking federal jurisdiction, the plaintiff "bears the burden of establishing

[the Article III standing] elements." *Virgin Islands Conservation Soc'y, Inc. v. Virgin Islands Bd.*

---

[1] Although Huber argues that the instant motion is untimely, objections to standing may be raised
by any party—or by the court—at any time, including more than 15 days after summary
judgment. *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)
(citing *Elkin v. Fauver*, 969 F.2d 48, 52 n.1 (3d Cir. 1992)); *Manuel v. NRA Grp. LLC*, 722 F.
App'x 141, 145 (3d Cir. 2018) (citing *Zelson v. Thomforde*, 412 F.2d 56, 58 (3d Cir. 1969)).

*of Land Use Appeals Golden Resorts LLLP*, 10 F.4th 221, 233 (3d Cir. 2021) (quoting *Spokeo,*

*Inc. v. Robins*, 578 U. S. 330, 340 (2016)) (internal quotations omitted).

SAI contends that Huber and the Class Members lack Article III standing because they

have not suffered a concrete injury-in-fact. A violation of § 1692e does not automatically

provide Huber and Class Members with standing. *See TransUnion*, 141 S. Ct. at 2205 (citing

*Spokeo*, 578 U.S. at 341). This leads SAI to argue that Huber's injury—being confused or misled

by debt collection letters—is not an actionable intangible harm, as it lacks a connection to the

types of intangible harms historically recognized as sufficient for Article III Standing. Def.'s Br.

8–9. Because Huber and the Class Members suffered no concrete injury-in-fact, SAI argues, they

lack standing to bring a claim against SAI, and the Court thus lacks subject matter jurisdiction

over the § 1692e claim. *Id.* at 10.

Huber counters that she and Class Members have Article III standing to bring their §

1692e claim because SAI violated their substantive, statutorily recognized private right to

accurate and transparent communications. Pl.'s Br. 9–10. Because SAI did not clearly

communicate the amount owed, Huber argues, she and the Class Members were deprived of

clearly communicated information that Congress has indicated they are owed. *Id.* at 14. The lack

of clarity in SAI's letter prevented Huber from determining how much she owed and how to pay

down her debt. *Id.* This misinformation, she argues, is a concrete—if intangible—informational

harm that satisfies the injury-in-fact requirement for Article III standing. *Id.*

The injury-in-fact requirement includes two sub-elements: the injury must be (1)

particularized and (2) concrete. *Spokeo*, 578 U.S. at 334 (citing *Friends of the Earth, Inc. v.*

*Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). For a harm to be

concrete, it must be "real, and not abstract." *TransUnion*, 141 S. Ct. at 2204. Although Congress

"may elevate harms that exist in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* at 2205 (internal quotations omitted). As such, the Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* (quoting *Spokeo*, 578 U.S. at 341).

In evaluating whether intangible harms recognized by statute are sufficient for Article III standing, courts must look not only to the judgment of Congress in codifying the harm, but also to history—that is, to consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 110 (3d Cir. 2019) (quoting *Spokeo*, 578 U.S. at 341). If an intangible injury is simply "a bare procedural violation, divorced from any concrete harm," the plaintiff has failed to meet her burden to show Article III standing. *Id.* at 111. Only when "a procedural right protects a concrete interest [does] a violation of that right . . . create a sufficient 'risk of real harm' to the underlying interest to satisfy the requirement of concreteness.'" *Id.* (quoting *Spokeo*, 578 U.S. at 341).

Although the jurisdictional question of standing is not novel, it is only post-*Spokeo* that courts have consistently examined the question of injury-in-fact in statutory claims by debtors. Significantly, both *Spokeo* and *TransUnion* are Fair Credit Reporting Act cases; the Supreme Court has never applied these holdings to the FDCPA, or closely examined the question of harm in FDCPA cases. The Third Circuit has applied *Spokeo* to only two FDCPA cases, both involving allegations of disclosure of personal information—claims of reputational harm very

similar to those in *Spokeo* and *TransUnion* notwithstanding the different statutory frameworks upon which they were based.

In *St. Pierre v. Retrieval-Masters Creditors Bureau*, 898 F.3d 351 (3d Cir. 2018), the plaintiff alleged the defendant debt collection agency violated the Fair Debt Collection Practices Act (FDCPA) when it disclosed his debtor account number through a glassine window on an envelope sent to him through the mail. *Id.* at 355–56. In a long and thoughtful discussion devoted to *Spokeo*, Judge Krause determined that "unauthorized dissemination of personal information . . . causes an injury in and of itself" and concluded the plaintiff had standing. *Id.* at 357. Considering both congressional intent and historical precedent, the court wrote that exposure of the account number "implicate[d] a core concern animating the FDCPA—the invasion of privacy—and thus [wa]s closely related to" a traditional harm. *Id.* at 357–58 (internal quotations omitted). And in *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 279 (3d Cir. 2019), the Third Circuit extended the holding of *St. Pierre* to a claim by a plaintiff who received a debt collection letter in an envelope containing a QR code that, when scanned, revealed her account number with the collection agency. In holding that the plaintiff had standing, the court determined that "disclosure of the debtor's account number through a QR code, which anyone could easily scan and read, still 'implicates core [and historic] privacy concerns.'" *Id.* at 280 (quoting *St. Pierre*, 898 F.3d at 304).

Although our Circuit has not issued a precedential opinion on injury-in-fact stemming from the misleading communications of debt collectors, it is important to recognize that *Spokeo* does not change the preexisting standard for Article III standing. In *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3d Cir. 2017), the Third Circuit clarified its interpretation of the injury-in-fact requirement post-*Spokeo*:

> [W]e do not believe that the [*Spokeo*] Court . . . intended to change the traditional standard for the establishment of standing. . . . *Spokeo* itself does not state that it is redefining the injury-in-fact requirement. Instead, it reemphasizes that Congress has the power to define injuries . . . that were previously inadequate in law. In the absence of any indication to the contrary, we understand that the *Spokeo* Court meant to reiterate traditional notions of standing, rather than erect any new barriers that might prevent Congress from identifying new causes of action though they may be based on intangible harms. In short, out of a respect for stare decisis, we assume that the law is stable unless there is clear precedent to the contrary.

*Id.* at 637–38 (internal citations and quotations omitted).

Furthermore, other Circuits continue to recognize that misleading information about debtors that influences a plaintiff's credit or management of their debt causes informational harm sufficiently concrete for Article III standing. *See Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75, 80–82 (2d Cir. 2018) (finding standing for § 1692e claim based on informational harm that "could hinder the exercise of [plaintiff's] right" to engage in foreclosure proceedings); *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1152 (7th Cir. 2022) ("Consumers suffered a concrete injury when the Debt Collectors communicated false information."); *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1207 (11th Cir. 2019) (finding standing for plaintiff who experienced loss of time in communicating with debt collector about misinformation in collection letters, as well as associated financial loss); *cf. Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1005 (11th Cir. 2020) (finding no standing for plaintiffs who received allegedly misleading communications from debt collectors and who acknowledged that they were not personally misled but insisted that others might have been); *Frank v. Autovest, LLC*, 961 F.3d 1185, 1188 (D.C. Cir. 2020) (finding no standing where plaintiff testified that she did not act or fail to take action based on misleading debt statements). An FDCPA violation may "cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir.

2021) (citing *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020)).

 Adequacy of informational harms for standing purposes therefore turns on a plaintiff's consequential action or inaction following receipt of a misleading or deceptive collection letter; confusion itself is not enough. *See Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021) (citing *Garland v. Orlans, PC*, 999 F.3d 432, 437–38 (6th Cir. 2021)) ("[C]onfusion alone is not a concrete injury for Article III purposes."); *Larkin*, 982 F.3d at 1066 (7th Cir. 2020) (finding no standing where plaintiffs failed to allege harm or an appreciable risk of it flowing from the alleged § 1692e violation); *Trichell*, 964 F.3d at 1004 (recognizing the historical import of informational harms but emphasizing that they require consequential injury). *But see Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 (6th Cir. 2020) (finding that, where debtor failed to pay debt because of confusing notice and pleaded anxiety as a concrete injury, there was no standing because "[t]he cause of [his] anxiety falls squarely on [plaintiff] because he chose not to pay his debts—and now fears the consequences of his delinquency.").

 In the instant matter, Huber testified that she did not pay her bill because she did not know which amount to pay. Pl.'s Br. 14. She was not merely confused or anxious; she was also unable to undertake reasonable action with the benefit of accurate information because of SAI's misleading collection letter. *Id.* As a result, Huber suffered financial consequences. *Id.* Such a response is an inevitable consequence of receiving a misleading and deceptive debt collection letter.[2]

---

[2] Huber is thus unlike the plaintiff in *Trichell*, who admitted they were not misled by their debt collection letter. 964 F.3d at 1005. Huber was misled and consequently failed to act based on SAI's misinformation and suffered the associated financial consequences (and not simply stress or anxiety as in *Buchholz*). Huber is also unlike the plaintiff in *Frank*, who testified that she did not act or fail to act based on her debt collector's misleading debt letter. 961 F.3d at 1188. Huber suffered consequential harm when she was unable to act following receipt of SAI's letter; her inability to act was an inevitable consequence of receiving an inherently deceptive letter.

SAI's arguments to the contrary are not persuasive. SAI insists that Huber "did not alter her course of action in any way based on the content of the Letter" because her chosen course of action was to seek assistance from a credit counselor and to provide him with the letter from SAI. Def.'s Rep. Br. 9. But Huber's actions after receipt of the SAI letter—seeking assistance from a professional to figure out how to interpret the letter and how to handle her debt—supports Huber's argument rather than SAI's. Huber was both confused <u>and</u> unable to pay down her debts or otherwise take appropriate action (other than turning to a third party at her own additional cost) because of the misinformation in SAI's letter. SAI's letter "alter[ed] a plaintiff's response to a debt," and that plaintiff, Jamie Huber, experienced concrete harm as a result.

Class Members have Article III standing under the same theory of harm. In certifying the class in this matter, I determined that "any iteration of SAI's form letter" is confusing to the recipient, whether they had one debt or several debts placed with SAI for collections. ECF No. 71 at 7. Because all Class Members received the same uniformly confusing letter from SAI, all Class Members experienced real informational harm. This brand of informational harm—being provided with misleading or deceptive information about a debt, such that the debtor cannot know how much they must pay to settle that debt—inevitably results in the action of the recipient and in failure to appropriately manage debt.

"[T]raditional notions of standing" require a plaintiff to establish that she has suffered a concrete and particularized injury in fact. *Horizon Healthcare*, 846 F.3d at 633, 638 (citing *Lujan*, 504 U.S. at 560). The instant Class satisfies both requirements. The harm experienced by each Class Member is concrete: it is an actual informational harm that inevitably prevented that Member's appropriate action to manage their debt. In matters of debt collection, informational harm leads to financial harm. The harm experienced by each Class Member is also

particularized, as each letter from SAI was an individualized misleading and deceptive representation of each Class Member's debt with inevitable consequences for that individual Member's debt management. Furthermore, SAI's form letter implied that Huber and Class Members may have owed more than they really did, exposing every Class Member to the risk of additional financial harm in the form of surplus payments to SAI. Pl.'s Br. 15.

Although SAI urges the Court to conclude otherwise, *TransUnion* is not to the contrary. In *TransUnion*, the Supreme Court clarified *Spokeo* by noting that, at least in Fair Credit Reporting Act suits for damages, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm." 141 S. Ct. at 2210–11 (citations and footnote omitted). Here, Huber and Class Members suffered not only the risk of financial harm but additional informational and financial harms: the inability to act appropriately and the financial injury that resulted. Therefore, even had the *TransUnion* Court noted that their statement about the inadequacy of risked future harm also extends to claims under the FDCPA—which it did not—Huber and the Class Members retain Article III standing over their § 1692e claim.

In this case, the harm experienced by each Class Member damaged their individual informational and financial interests. These concrete harms are both recognized by Congress in the FDCPA and consonant with the history of the types of harms "traditionally been regarded [by the Third Circuit] as providing a basis for a lawsuit." *DiNaples*, 934 F.3d at 279 (quoting *Spokeo*, 578 U.S. at 341). "[O]ut of a respect for stare decisis, we assume that the law is stable unless there is clear precedent to the contrary." *Horizon Healthcare*, 846 F.3d at 638. Under the holdings of *Spokeo* and *TransUnion*, Huber and the Class Members have Article III standing.

## II.      CONCLUSION

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018). Congress thus sought to protect debtors from the very harms Huber and Class Members suffered. These harms were both particularized and concrete. As a result, Huber and the Class have suffered an injury-in-fact and satisfied their burden of establishing Article III standing.

An appropriate Order follows.


　　　　　　　　　　　　　　　__s/ANITA B. BRODY, J._____
　　　　　　　　　　　　　　　ANITA B. BRODY, J.

COPIES **VIA ECF**