## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE HUBER, on behalf of all others similarly situated, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | 19-1424 |
| v. | : | |
| | : | |
| SIMON'S AGENCY, INC., | : | |
| Defendant. | : | |

**Anita B. Brody, J.**                                                                          **June 18, 2025**

### MEMORANDUM

After nearly six years of litigation, Plaintiff Jamie Huber moves for an award of costs and attorneys' fees under the Fair Debt Collection Practices Act. Defendant Simon's Agency, Inc. concedes that Huber is entitled to an award, but objects to the amount of fees requested. For the reasons that follow, the Court will award Huber $3,326.25 in costs and $59,513.90 in fees.

## I.    LEGAL STANDARD

In "any successful action to enforce [] liability" under the Fair Debt Collection Practices Act ("FDCPA"), an award of costs and "a reasonable attorney's fee" is mandatory. 15 U.S.C. § 1692k(a)(3); *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991), *overruled on other grounds by Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020). Three standards govern a court's analysis of a request for attorney's fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-35, 433 n.7 (1983) (setting forth standards that are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"); *Graziano*, 950 F.2d at 114 ("[I]n a typical case under the [FDCPA], [a] court should determine what constitutes a reasonable fee in accordance with the substantial Supreme Court precedent pertaining to the calculation of

reasonable attorney's fees.") (citing *Texas State Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989) *and Hensley*, 461 U.S. at 433-37). First, "no fee award is permissible until the plaintiff has crossed the 'statutory threshold' of prevailing party status." *Texas State Teachers Assoc.*, 489 U.S. at 789 (quoting *Hensley*, 461 U.S. at 433). A plaintiff prevails if she succeeds "on any significant issue in litigation which achieves some of the benefit sought in bringing the suit." *Id.* (internal citation omitted). Second, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The resulting number—the "lodestar"—is presumptively reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Third, "other considerations" may warrant an upward or downward adjustment to the lodestar, "including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434.

The moving party bears the burden of proving that its request for attorney's fees is reasonable by "submit[ting] evidence supporting the hours worked and rates claimed." *Rode*, 892 F.2d at 1183. The burden then shifts to the opposing party "to challenge . . . the reasonableness of the requested fee." *Id.* A court "cannot decrease a fee award based on factors not raised at all by the [opposing] party"; however, once the opposing party "raises objections to the fee request," a court "has a great deal of discretion to adjust the fee award in light of those objections." *Id.*

## II.    DISCUSSION

As an initial matter, the Court concludes that Huber has "crossed" the requisite "statutory threshold" entitling her to an award of costs and fees. *Texas State Teachers Assoc.*, 489 U.S. at 789 (internal citation omitted). More specifically, Huber's "action" was "successful" because the Court granted—and the Court of Appeals for the Third Circuit affirmed—summary judgment in her favor on her individual § 1692e claim. 15 U.S.C. § 1692k(a)(3); *Huber v. Simon's Agency,*

*Inc.*, 84 F.4th 132, 151 (3d Cir. 2023). She is thus entitled to recover the costs of the action and reasonable attorneys' fees.

Huber moves for $3,326.25 in costs and $147,219.04 in attorneys' fees. *See* Mem. in Supp. Mot. for Fees and Costs 13, ECF No. 130-1 (hereinafter "Mem."); Reply Br. 20, ECF No. 132.[1] In support of her request for fees, she has submitted (1) records detailing the hours her two attorneys (Yitzchak Zelman and Ari Marcus) spent working on the case; and (2) declarations outlining the reasonableness of their respective hourly rates. *See* Mem. Ex. A, ECF No. 130-4 (hereinafter "timesheet"); Mem. 8-11 (discussing rates); Zelman Decl., ECF No. 130-2 (discussing Zelman's work on the case and rates charged); Marcus Decl., ECF No. 130-3 (discussing same for Marcus); Marcus Reply Decl. ¶¶ 3-4 (discussing Marcus' work on the fee petition), ECF No. 132-1.

Simon's Agency, Inc. ("SAI") agrees that Huber is entitled to all $3,326.25 in costs she seeks. *See* Resp. 16, ECF No. 131.[2] SAI likewise does not dispute the reasonableness of Huber's proposed hourly rates. *Id.* at 15. SAI, does, however, contend that (1) 30.9 hours should be excluded from the lodestar calculation; and (2) the lodestar should be reduced by 75% due to Huber's limited overall success. *Id.* at 10-15.

The Court will start by calculating the lodestar—first by determining the hours Huber's attorneys reasonably expended, then assessing the reasonableness of Huber's requested hourly rates—and then will address whether a downward adjustment is warranted.

---

[1] Huber initially moved for $136,006.05 in attorneys' fees. *See* Mem. 13. She later amended the amount to account for the 18.4 hours Marcus spent on the fee petition—an additional $11,219.99 in fees. *See* Reply Br. 20; Marcus Reply Decl. ¶¶ 3–4, ECF No. 132-1.

[2] In light of SAI's concession and because the Court finds these costs were documented and reasonably incurred, the Court will award Huber all $3,326.25 in costs. *See* Timesheet 7 (itemized costs); Mem. 13 (explaining each line item).

A.      **The Lodestar**

1.      **Hours Reasonably Expended**

In determining the number of hours "reasonably expended" on a particular case, a court must "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Pennsylvania Env't Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998) (internal quotations omitted).

Huber contends that her two attorneys reasonably expended 283.6 hours litigating this case: 63.5 by Zelman, and 220.1 by Marcus. *See* Timesheet.  SAI asks the Court to exclude 30.9 of those hours as (1) "unnecessary . . . for consumer law experts"; (2) "vague"; (3) "administrative"; (4) "block billing"; (5) "duplicative"; and/or (6) "non-billable interoffice communications." Resp. 10-13.  The Court addresses each of SAI's six objections in turn.

i.      **"Unnecessary . . . for consumer law experts"**

SAI argues that the 1.2 hours Marcus spent "review[ing] relevant FDCPA and TCPA laws" at the very outset of the case was "unnecessary" given Marcus' expertise in consumer law.  Resp. 10, 10 n.2.  Had Marcus "run up an inordinate amount of time researching" these laws, the Court might have agreed.  *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983).  1.2 hours is hardly inordinate.  *See A.B. by & through F.B. v. Pleasant Valley Sch. Dist.*, No. 3:17-CV-02311, 2019 WL 2715681, at *5 (M.D. Pa. June 28, 2019) ("[I]t is not inherently unreasonable for attorneys to bill for limited time spent reviewing and researching matters that fall within their legal specialty."), *aff'd*, 839 F. App'x 665 (3d Cir. 2020).  After reviewing the billing records in their entirety, the Court is satisfied that neither Marcus nor Zelman engaged in any "non-stop meter running" and will not exclude time from the lodestar calculation on this ground.  *Ursic*, 719 F.2d

at 677.

### ii.     Vague entries

SAI contends that 16 billing entries are too "vague" to be recoverable—for example, "PC with client," "emails with client," and "R court order." *Id.* at 10-12. "[A] fee petition should include 'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys.'" *Rode*, 892 F.2d at 1190 (internal citation omitted). Even still, a fee petition need not detail "the precise activity to which each hour was devoted nor the specific attainments of each attorney"; rather, it need only provide a court with enough information "to determine if the hours claimed are unreasonable for the work performed." *Id.*

Each of the 16 challenged entries details the general nature of the activity performed, the date the activity took place, and the amount of time spent on the activity in fractional hours—all of which is enough for the Court to assess their reasonableness. *See Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1037–38 (3d Cir. 1996) (itemized and dated time entries regarding "research," "review[ing]" and "prepar[ing]" were sufficiently specific); *Rode*, 892 F.2d at 1189 (rejecting argument that timesheet entries need to set forth "the nature of briefs, pleading, research, and conferences").[3] The Court therefore declines to exclude time on vagueness grounds.

### iii.     Administrative tasks

Third, SAI asserts that 14 entries are nonrecoverable because they show that Zelman and Marcus spent time on "administrative" rather than legal tasks. *See* Resp. 10-12. As a general rule, hours that would not be billed to a client "are not properly billed to an adversary." *Pub. Int. Rsch.*

---

[3] To the extent the entries include abbreviations, the Court has no difficulty interpreting them. *See Rode*, 892 F.2d at 1190–91.

*Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (internal citation omitted). Because administrative tasks—routine or clerical work that could be performed by non-attorneys—are not the type normally billed to a client, a court can exclude them from the lodestar calculation. *See, e.g., Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995) (excluding hours lead counsel spent on tasks that were also performed by a paralegal); *Bilazzo v. Portfolio Recovery Assocs., LLC*, 876 F. Supp. 2d 452, 471 (D.N.J. 2012) (excluding hours billed by paralegal on administrative tasks). Alternatively, when a lawyer spends time on "matters easily delegable to non-professionals or less experienced associates," a court can include those hours in the lodestar calculation but bill them at a lower rate. *Ursic*, 719 F.2d at 677.

The Court agrees that all of the 14 entries to which SAI objects include time spent on administrative tasks and are not properly billed to SAI. And, after going "line, by line, by line through the billing records supporting the fee request" as is required by the reasonableness inquiry, the Court finds that additional entries are non-compensable for the same reason. *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 362 (3d Cir. 2001). It is surprising that Zelman and Marcus continue to bill for these tasks, let alone bill for them at their usual rates, despite having been put on notice that such fees are non-recoverable. *See Piccinetti v. Clayton, Myrick, McClanahan & Coulter, PLLC*, No. CV 16-4032 (TJB), 2018 WL 5313919, at *9 (D.N.J. Oct. 26, 2018) (identifying entries on Zelman and Marcus' timesheets that included time spent on administrative tasks and excluding that time from lodestar calculation).[4] The Court will therefore exclude, rather than bill at a lower rate, the time spent on these tasks as follows:

---

[4] These tasks included, but were not limited to, filing an affidavit of service, calendaring deadlines, preparing and filing a notice of appearance, preparing a letter and order requesting leave to file a late response, and preparing a brief for filing. *Compare Piccinetti*, 2018 WL 5313919, at *9 (identifying entries that included administrative tasks), *with* Mot. for Attorney Fees Ex. B, ECF No. 47–5 (timesheet submitted by Zelman and Marcus).

| Attorney | Date | Description | Time Billed | Time Excluded |
|---|---|---|---|---|
| Ari Marcus | 3/11/2019 | Prepared retainer for client signature | .2 | .2 |
| Ari Marcus | 4/12/2019 | R Affidavit of Service, File Returned Summons | .2 | .1 |
| Ari Marcus | 8/21/2019 | Draft stipulation and proposed order re: time to respond to complaint | .4 | .3 |
| Ari Marcus | 9/9/2019 | Review Notice and calendar settlement conference call | .2 | .2 |
| Ari Marcus | 9/13/2019 | Draft stipulation to extend time to respond | .3 | .2 |
| Ari Marcus | 9/16/2019 | Review and Calendar Order re: settlement | .1 | .1 |
| Ari Marcus | 9/16/2019 | Review and calendar Order re: MTD | .1 | .1 |
| Ari Marcus | 10/3/2019 | Prepare courtesy copies for Judge Brody | .4 | .4 |
| Ari Marcus | 10/15/2019 | Review Order and Calendared new date for Reply | .1 | .1 |
| Ari Marcus | 2/11/2020 | R amended scheduling order and calendared accordingly | .3 | .2 |
| Ari Marcus | 6/29/2020 | Review Notice of Appearance | .1 | .1 |
| Ari Marcus | 6/30/2020 | Draft Motion for Extension | .3 | .2 |
| Ari Marcus | 11/17/2020 | Draft Consent Motion to Extend Dispositive Motions | .3 | .2 |
| Ari Marcus | 12/15/2020 | Calendar response deadlines | .2 | .2 |
| Ari Marcus | 2/1/2022 | File revised notice | .4 | .4 |
| Yitzchak Zelman | 7/13/2022 | Review proposed changes and finalized stipulation for filing | .4 | .2 |
| Ari Marcus | 8/12/2022 | File NOA | .2 | .2 |
| Yitzchak Zelman | 8/12/2022 | File NOA | .2 | .2 |

| Yitzchak Zelman | 3/3/2023 | Legal Fee: Reviewed and calendared calendaring notice, filed acknowledgment of arguing counsel | .5 | .4 |
| Yitzchak Zelman | 4/10/2023 | Legal Fee: Filed summary of oral argument. | .2 | .2 |
| Ari Marcus | 10/17/2024 | Reviewed proposed edits, incorporated changes, and filed scheduling order | .3 | .1 |
| Ari Marcus | 10/21/2024 | Calendar Scheduling order re: Fee Petition | .2 | .2 |

### iv.    Block-billed entries

SAI objects to three entries because of "block billing."  Resp. 11-12.  Block billing is a common practice that saves time (and, as a result, money).  *U.S. ex rel. John Doe I v. Pennsylvania Blue Shield*, 54 F. Supp. 2d 410, 415 (M.D. Pa. 1999).  Rather than exclude a block-billed entry wholesale from the lodestar calculation, a court should "look at the entire block, compar[e] the listed activities and the time spent, and determin[e] whether the hours reasonably correlate to all of the activities performed."  *Id*.

The Court disagrees that the three entries SAI finds objectionable[5] should be excluded, but finds that other block-billed entries commingle reasonably billed work with work that is administrative.  The Court will exclude the time from those entries spent on administrative work as follows:

---

[5] Though these entries were block-billed, the Court finds they evidenced hours reasonably expended on expert outreach, strategy discussions, drafting a motion for summary judgment, and appellate argument preparation.

| Attorney | Date | Description | Time Billed | Time Excluded |
|---|---|---|---|---|
| Ari Marcus | 8/27/2020 | PC with Court re: Schedule, Calendared amended schedule | .2 | .1 |
| Yitzchak Zelman | 4/6/2023 | Legal Fee: Reviewed notice setting matter down for oral argument. Calendared same. Researched our panel and pulled cases they were involved in. Obtained recordings of oral arguments they presided over. | 3.4 | .1 |
| Yitzchak Zelman | 4/19/2023 | Legal Fee: Reviewed Third Circuit's new decision on standing in Deutsch, filed a 28j later in our appeal to notify the Court. | .7 | .1 |

### v.    Duplicative entries

SAI also objects to six entries as "duplicative."  Resp. 11-12.  First, SAI contends that Marcus double-billed for reviewing a reply brief: once on January 19, 2021, and again on January 28, 2021.  *See* Resp. 11; Timesheet 4-5.  SAI appears to have forgotten that it filed two reply briefs—one on January 18, and another on January 28—both of which Marcus had an obligation to review.  Second, SAI takes issue with four of Marcus' entries from December 2021 and January 2022 that refer to, inter alia, his review and research regarding the potential consequences for failing to disclose insurance on a Rule 26(f) report.  *See* Resp. 11-12; Timesheet 5.  The Court,

however, finds these 3.6 hours reflect a reasonable time expenditure for the tasks described. Finally, SAI objects to the combined 16 hours Marcus and Zelman spent preparing for oral argument on April 13 and 23, 2023. *See* Resp. 12; Timesheet 7. But as SAI's counsel likely knows, "preparation"—especially for a complex and case-defining appellate argument—"often requires collaboration and rehearsal." *Sheffer v. Experian Info. Sols., Inc.*, 290 F. Supp. 2d 538, 546 (E.D. Pa. 2003) (quoting *Rodriguez-Hernandez v. Miranda–Velez*, 132 F.3d 848, 860 (1st Cir. 1998)); *see also Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:02-CV-0134, 2016 WL 3522964, at *11 (M.D. Pa. June 28, 2016) ("It is more than reasonable for two attorneys to prepare for oral argument even if only one of them is ultimately making the argument."). The Court will therefore include all of the time recorded in these entries.

### vi.    "Non-billable interoffice communications"

Finally, SAI claims that 10 entries reflect "non-billable interoffice communications." Resp. 11-12. As a threshold matter, "it is reasonable for lawyers . . . to communicate about a case throughout the course of the litigation." *Sch. Dist. of Philadelphia v. Deborah A.*, No. CIV.A. 08-2924, 2011 WL 2681234, at *3 (E.D. Pa. July 8, 2011). That being said, "when several attorneys bill a large number of hours for strategy and conferencing, a reduction in the fee request may be warranted"—particularly when those attorneys bill for "time spent on both sides of the correspondence and conferencing." *Arlington Indus., Inc.*, 2016 WL 3522964, at *11 (citing *Daggett v. Kimmelman*, 811 F.2d 793, 797 (3d Cir. 1987)). That is not what happened here. The billing records show that when Marcus and Zelman conferred to discuss the case, only one of them billed for it. The Court therefore finds that these hours are recoverable and will include them in the lodestar calculation.

### 2.    Reasonable Hourly Rates

### i.    Regular Hourly Rates

Huber seeks an hourly rate of $522.50 for Zelman and $577.50 for Marcus.  *See* Mem. 10.[6]

SAI concedes Huber's proposed rates are reasonable insofar as they "conform" with the fee

schedule promulgated by Community Legal Services of Philadelphia ("CLS"). Resp. 15.

Fees are awarded based on the *current* hourly market rate, which is "the rate at the time of

the fee petition, not the rate at the time the services were performed." *Lanni v. New Jersey*, 259

F.3d 146, 149 (3d Cir. 2001) (citations omitted). "The 'starting point' in determining the

appropriate hourly rate is the attorneys' usual billing rate.  The Supreme Court has directed that

[a] district court should then consider the 'prevailing market rates' in the relevant community,"

*Pennsylvania Envtl. Def. Found.*, 152 F.3d at 231 (internal quotations and citations omitted), for

attorneys of "comparable skill, experience, and reputation," *Rode*, 892 F.2d at 1183.  The Court of

Appeals for the Third Circuit has "approvingly" cited the fee schedule promulgated by CLS as

"well developed" and "a fair reflection of the prevailing market rates in Philadelphia." *Maldonado*

*v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (internal citations omitted).  The CLS fee schedule

was most recently updated with an effective date of January 19, 2023.  *See Attorney Fees,*

---

[6] The Court notes that Huber's proposed lodestar is *not* based on these rates, but rather, a graduated scale that roughly tracks her attorneys' historical hourly rates over the six years of the case.  *See* Mem. at 9 (setting forth rates for each attorney from 2019–2025).  Huber is correct that applying their historical hourly rates would mean "charging *less* than the [prevailing market] rate for the vast majority of their work." *Id*. at 10.  Reading between the lines, it appears as if Huber's attorneys are trying to strike a more reasonable looking bargain.  But given that the Court of Appeals squarely rejected a district court's attempt to use historical rates in *Lanni v. New Jersey*, the Court declines to do so here.  259 F.3d 146, 150 (concluding "that the District Court's use of an historical graduated scale . . . was a misapplication of the appropriate legal standard."); *see also LeJeune v. Khepera Charter Sch.*, 420 F. Supp. 3d 331, 340–41 (E.D. Pa. 2019) (rejecting argument that hourly rates "should reflect the cost of counsel's time on the date services were rendered" based on *Lanni*).

COMMUNITY LEGAL SERVICES, https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited June 18, 2025). Courts within the Third Circuit have adjusted the CLS fee schedule rates upwards to account for inflation. *See, e.g., Donofrio v. IKEA US Retail, LLC*, No. CV 18-599, 2024 WL 3511614, at *3 (E.D. Pa. July 23, 2024) (adjusting hourly rates by five percent annually); *Ismail v. IHI Power Servs. Corp.*, No. CV 20-4801, 2023 WL 3689608, at *4 (E.D. Pa. May 25, 2023) (same); *Earley v. JMK Associates*, No. 18-CV-760, 2020 1875535, at *2 (E.D. Pa. Apr. 15, 2020) (same). The Court will do the same in fixing appropriate hourly rates for Marcus and Zelman.

Huber contends that Zelman's rate should be set at the "midpoint" and Marcus' at the "upper [end]" of the CLS range, and that accounting for inflation, Zelman should be awarded $522.50 an hour and Marcus $577.50. Mem. 10. As of the time the fee petition was filed, Zelman had practiced law for 12 years and Marcus for 14. Per the declarations submitted in support of Huber's request for fees, both attorneys (1) focus their practice on consumer protection law; (2) have significant experience litigating under the FDCPA; and (3) charge anywhere from $550-750 an hour. *See* Zelman Decl.; Marcus Decl. The January 2023 CLS fee schedule sets forth a comparably lower hourly rate for attorneys with 11 to 15 years of experience—$420-525 an hour (or $463.05-$578.81, accounting for two years of inflation).

For Zelman, the Court finds that the January 2023 CLS fee schedule billing rate of $441 per hour reflecting his 12 years of experience is proper. With a five-percent annual increase accounting for two years of inflation, the Court will fix Zelman's regular hourly rate at $486.20. For Marcus, the Court finds that the January 2023 CLS fee schedule billing rate of $504 per hour reflecting his 14 years of experience is proper. Accounting for two years of inflation, the Court

will fix Marcus' regular hourly rate at $555.66.[7]

### ii.    Hourly Rates for Travel Time

Because neither SAI nor Huber address how Zelman and Marcus should be reimbursed for travel time, the Court exercises its discretion in addressing how travel time should factor into the lodestar.

"In order to determine the rate at which attorneys may be compensated for their travel time, 'a court must look to the practice in the local community.'" *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005), *as amended* (Nov. 10, 2005) (internal citation omitted). Courts in this district have opted to reimburse attorneys for travel time at both their full hourly and reduced rates. *Compare Rush v. Scott Specialty Gases*, 934 F. Supp. 152, 156 (E.D. Pa. 1996) (approving reimbursement of travel time at regular hourly rates) *with Haberern v. Kaupp Vascular Surgeons, Ltd.*, 855 F.Supp. 95, 100 (E.D. Pa. 1994) (awarding reimbursement of attorney travel time at a 50% reduced hourly rate), *vacated in part on other grounds*, 24 F.3d 1491 (3d Cir. 1994).

Huber's attorneys, who billed relatively few hours for travel, opted for both approaches: Zelman charged his regular hourly rate for the 4 hours he spent travelling in connection with the case, while Marcus charged 50% of his regular hourly rate for the 6.5 hours he billed for travel. *Compare* Timesheet 7 (Zelman entry dated April 25, 2023 regarding travel to and from

---

[7] Accounting for two years of inflation, these rates are consistent with those that other courts in this District have recently deemed reasonable for Zelman and Marcus in FDCPA class action settlements. *See Black Grievance Comm. v. Philadelphia Elec. Co.,* 802 F.2d 648, 652 (3d Cir. 1986), *vacated on other grounds*, 483 U.S. 1015 (1987) (a court may consider hourly rates set for a specific attorney in previous court decisions if the rates were for the same attorney and same type of work over a contemporaneous time period); *Barenbaum v. Hayt, Hayt & Landau, LLC*, No. CV 18–4120, 2021 WL 120925, at *6 (E.D. Pa. Jan. 13, 2021) (approving hourly rate of $450 for Zelman and $500 for Marcus in connection with FDCPA class action settlement).

Philadelphia for oral argument) *with id.* at 2-3 (Marcus entries dated August 20, 2019, March 5, 2020, and March 12, 2020 regarding travel to and from Rule 16 conference and depositions). Having received no objections from SAI, and because both full and half-rates have been deemed reasonable, the Court will reimburse Zelman and Marcus for their travel time at the rates they recorded: Zelman at 100% of his regular hourly rate ($486.20), and Marcus at 50% ($277.83).

### 3. Lodestar Calculation

Based on the above, the Court calculates the lodestar as follows:

| Attorney | Approved Hours | Approved Hourly Rate | Lodestar Amount |
|---|---|---|---|
| Zelman | 62.3 hours (excluding 1.2 hours as unreasonably billed, including 4 hours of travel time) | $486.20 | $30,290.26 |
| Marcus | 210 hours (excluding 3.6 hours unreasonably billed and 6.5 hours of travel time billed at 50%) | $555.66 | $116,688.60 |
| | 6.5 hours (travel time billed at 50%) | $277.83 | $1,805.90 |
| **Lodestar Total** | **$148,784.76** | | |

### B. Downward Adjustment to Lodestar

SAI argues that the lodestar should be reduced by 75% because Huber—by prevailing only on one of her three FDCPA claims and "voluntarily abandon[ing]" her putative class claims— achieved "only very limited success."  Resp. 15.  Huber contends that no reduction is warranted because she achieved "complete success."  Reply 10.

The lodestar "is presumed to be the reasonable fee."  *Blum v. Stenson*, 465 U.S. 886, 897, (1984).  Nonetheless, after calculating the lodestar, a court has discretion to adjust it up or down,

based on a variety of factors. *Windall*, 51 F.3d at 1185.[8] The Supreme Court has instructed that "the most critical" of these factors "is the degree of success obtained." *Hensley*, 461 U.S. at 436. When a defendant requests a downward adjustment based on plaintiff's limited success, a court must "make clear that it has considered the relationship between the amount of fee awarded and the results obtained." *Id.* at 437. "There is no precise rule or formula for making" such an adjustment. *Id.* at 436. A court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37.

By certain measures, Huber achieved "a high degree of success." *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995). Even though Huber did not prevail on all three of her individual FDCPA claims and ultimately decided not to pursue her class claims, she still achieved a "desired outcome": she held SAI accountable for its deceptive debt collection letter and is set to recover the maximum amount of statutory damages available under the FDCPA. *Hensley*, 461 U.S. at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of . . . certain grounds is not a sufficient reason for reducing a fee. The result is what matters."). Indeed, Huber could not have achieved a higher degree of success even if she had prevailed on all three claims because the FDCPA caps statutory damages at $1,000 per lawsuit, not per violation. 15 U.S.C. § 1692k(a)(2)(A); *Williams v. Mountain Run Sols.*, No. 2:21-CV-05630-JDW, 2022 WL 2905175, at *2 (E.D. Pa. July 22, 2022). Furthermore, if putative class members later decide to vindicate their individual rights under § 1692e, they may benefit from her

---

[8] These factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Windall*, 51 F.3d at 1185 n. 8.

victory in this case. *See China Agritech v. Michael H. Resh*, 584 U.S. 732, 736 (2018) (the statute of limitations is tolled "during the pendency of a putative class action, allowing unnamed class members to . . . file individual claims if the class fails.").

By other measures, Huber's overall success was limited. Although she prevailed on her individual § 1692e claim, she did not—as she claims in her fee petition—obtain relief "for herself *and* hundreds of similarly situated class members." Mem. 13 (emphasis added). It's true that Huber continued pursuing her class claims after the Court of Appeals vacated this Court's order certifying the class and remanded the case "for individualized inquiry to determine the standing of the unnamed class members." *Huber*, 84 F.4th at 154. However, after the parties and the Court spent ten months attempting to heed the Court of Appeals' instructions, Huber "decided not to re-file a class certification motion." Proposed Case Management Plan, ECF No. 128. Huber's case may exemplify how the Court of Appeals' holding—namely, "that the predominance inquiry of the class action certification analysis cannot be conducted unless and until the District Court inquires into whether each class member did or did not detrimentally rely on the defendant's misleading collection letter, and the extent of the harm"—"dooms all class actions under § 1692e" and "undermines the statutory scheme" of the FDCPA. *Huber*, 84 F.4th at 163 (Rendell, J.) (concurring in part and dissenting in part). Even still, the Court cannot conclude that Huber achieved "complete success" for herself and hundreds of others as she claims. Resp. 10.

While the Court agrees with SAI that the lodestar should be reduced to account for Huber's limited success, the Court disagrees that a 75% reduction is appropriate. SAI appears to have arrived at this figure by comparing the total number of "claims" in the case (four) to those that Huber actually prevailed upon (one). Resp. 14-15 ("Because Plaintiff achieved success on only one (1) of her three (3) FDCPA claims, and she did not achieve any success on her class claims . .

. it would be reasonable to reduce the potential amount lodestar fees . . . by 75%.").[9]   Because *Hensley* expressly forbids this "mathematical approach" to lodestar reductions, the Court declines to apply it here. *See Hensley*, 461 U.S. at 435 n.11 ("Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors.").

SAI's proposed 75% reduction also assumes a clear divide exists between Huber's success and lack thereof.  But Huber did not bring "distinctly different claims for relief . . . based on different facts and legal theories" such that the work her attorneys performed on her unsuccessful claims was wholly unrelated to their work on her successful claim. *Hensley*, 461 U.S. at 434–35. All three of her FDCPA claims stemmed from a "common core of facts" involving SAI's attempt to collect a debt that Huber believed she did not owe. *Id.* at 435.  The same can be said of her putative class claims, both of which relied on the same argument that led her to prevail on her individual § 1692e claim:  that SAI's debt collection letter violated the FDCPA. *Id.*; *see also Huber v. Simon's Agency, Inc.*, No. CV 2:19-01424, 2021 WL 5356772, at *3 (E.D. Pa. Nov. 17, 2021) (observing that Huber's collection letter claims "rely on a single argument"); *Huber*, 84 F.4th at 151 (affirming that SAI's form letter "is the very definition of a 'deceptive' communication, in violation of § 1692e").  Given the overlap between Huber's successful and unsuccessful claims, a 75% lodestar reduction is unwarranted. *Webb v. Cnty. Bd. of Educ. of Dyer Cnty., Tenn.*, 715 F.2d 254, 259 (6th Cir. 1983) (declining to reduce fee award where plaintiff obtained individual relief via a settlement agreement but abandoned class action claims because "the individual and class allegations [were] sufficiently related such that no reduction in fees [was]

---

[9] SAI does not mention, and the Court has not considered, Huber's "success" on her Telephone Consumer Protection Act ("TCPA") claim.  After the Court denied Huber's motion for summary judgment on her TCPA claim, the parties jointly moved for an order dismissing that claim with prejudice.  ECF Nos. 88, 90.  In so moving, the parties agreed that "each party [was] to bear their own attorneys' fees and costs" with respect to Huber's TCPA claim.  ECF No. 88.

merited"), *aff'd sub nom. Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234 (1985).

Even though Huber's "claims were interrelated, nonfrivolous, and raised in good faith," some reduction to the lodestar is still warranted.  *Hensley*, 461 U.S. at 436.  Rather than "attempt[ing] to identify specific hours that should be eliminated" from the lodestar calculation, the Court will instead reduce the lodestar by 60% to account for Huber's limited success on her putative class claims.  *Id*.  Applying a 60% reduction to the lodestar set forth above ($148,784.76) results in a final attorneys' fee award of $59,513.90.

## III.    CONCLUSION

For the reasons outlined above, the Court will award Huber **$3,326.25** in costs and **$59,513.90** in fees.